IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MICHAEL MARTIN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:23-CV-00168-H-BU |
| NICK REYNA, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Michael Martin brings this action under 42 U.S.C. § 1983, alleging that Defendant Nick Reyna violated his constitutional rights. The undersigned submits these findings, conclusions, and recommendations (FCR) regarding Reyna's First Amended Motion to Dismiss and, in the Alternative, Opposed Motion for a More Definite Statement (Dkt. No. 27) and Martin's Motion for Summary Judgment (Dkt. No. 42).

For the reasons below, the Court should GRANT Reyna's Motion to Dismiss and DENY Martin's Motion for Summary Judgment.

## I. JURISDICTION

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Martin brings suit under 42 U.S.C. § 1983. Venue is proper in the Northern District of Texas, Abilene Division, because the events giving rise to Martin's claims occurred in Howard County, Texas. *See* 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter this FCR after United States District Court Judge James Wesley Hendrix automatically referred

1

Martin's case to the undersigned for pretrial management under Special Order 3-251. 28 U.S.C. § 636(b)(1).

## II. FACTUAL BACKGROUND

Martin owns two residential properties in Big Spring, Texas, which drew the attention of the City's code enforcement officials.[1] Martin resides at 700 Pine and owns the nearby property at 709 Pine Street. Dkt. Nos. 21 at 2, 4; 21-1 at 2. Reyna is a "code enforcement/building official" for Big Springs. Dkt. No. 21 at 2. On a date before April 2023, Martin claims that Reyna asked to buy a car (a Mustang) Martin owned. Dkt. No. 21-1 at 2. When Martin refused to sell, Reyna purportedly said that he would "come and throw [the Mustang] away" if Martin did not sell. *Id.* Still, Martin refused. *Id.*

On or about April 1, 2023, Martin received a notice that the Mustang was "a violation" and went to a hearing regarding the notice. *Id.* Andrew Hagen, Big Spring's City Attorney, attended this hearing and allegedly demanded that Martin accept the violation and accompanying fine; otherwise, he would "charge [Martin] to the max." *Id.* This initial hearing led the City to set an abatement hearing. *Id.* Around this time, Martin purchased the property at 709 Pine Street. *Id.*

At the abatement hearing, Martin and the City Council agreed to an order for the abatement of certain conditions on Martin's properties but also decided that the order would

---

[1] Generally, abatement refers to the process by which state and local authorities require property owners to remove nuisances from their property. The nuisances involved here, from what the undersigned can gather, appear to be those classified as public nuisances, which include abandoned vehicles, accumulated rubbish, and other unsanitary conditions. There are several Texas statutes potentially implicated here, depending on the type of nuisance involved. *See generally* TEXAS HEALTH & SAFETY CODE Ch. 343.

not authorize the removal of any "vehicles, lawnmowers, and other equipment with motors, along with kids toys and everything out of public view."[2] *Id.*

On or about August 3, 2023, Martin alleges that Reyna and several other city employees showed up at 700 Pine Street to execute the abatement order. *Id.* Shortly after these individuals arrived, Reyna tried unsuccessfully to have Martin arrested. *Id.* at 3. Reyna then tried multiple times to have a city dog catcher take Martin's dog, but the dog catcher refused each time. *Id.*

Soon after, Reyna stated, "Ok, the order says no vehicles, nothing with motors, and no kids toys." *Id.* Immediately after this statement, Reyna told a worker to throw away a riding lawn mower. *Id.* When that worker asked Reyna if he was sure, Reyna responded, "Yes, we're taking everything." *Id.* The worker then picked up the mower with "pincher things." *Id.* When Martin noticed this, he went to Reyna and raised the fact that the order did not apply to items with motors. *Id.* Reyna told Martin, "You want it back, you can have it back." *Id.* Martin replied, "Have it back you, see what you just did to it?" *Id.* Reyna dismissed this and continued with his work. *Id.* at 4. Later, Reyna told a worker to save one of Martin's four-wheelers for last. *Id.*

Less than an hour later, Martin claims that Reyna wanted to buy a Hummer that belonged to Martin and threatened to throw it away unless Martin sold it to him. *Id.* Martin agreed to sell the Hummer on the condition that Reyna leave his property—presumably items not covered by the order—alone. *Id.* Reyna said, "deal," but when Martin went to

---

[2] Neither party provided the Court with a copy of the City's abatement order.

3

grab the title for the Hummer, Reyna claimed that he had already paid another individual for the vehicle. *Id.* at 5.

Eventually, Reyna left, but city workers continued abating the properties. *Id.* at 6. Towards the end, Martin managed to stop one of the workers before they could throw away his four-wheeler and boat. *Id.* The worker called a supervisor, and ultimately, Martin was allowed to keep both items. *Id.*

### III. PROCEDURAL HISTORY

#### A. Case History

Martin filed this action on August 15, 2023. Dkt. No. 1. He filed an Amended Complaint on October 5, 2023. Dkt. No. 7. Reyna responded with a motion seeking dismissal or, in the alternative, for a more definite statement. Dkt. No. 14. The Court granted the request for a more definite statement and ordered Martin to file a second amended complaint. Dkt. No. 19. Martin filed his Second Amended Complaint on October 26, 2023. Dkt. No. 21.

Martin's Second Amended Complaint lists Nick Reyna as the sole defendant, and Martin checked a box stating that he was suing Reyna only in his official capacity. Reyna is an employee of the City of Big Spring, and a "claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F.Supp.3d 778, 789 (W.D. Tex. 2016); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–701 (1978). Thus, the undersigned construes Martin's Second Amended Complaint as bringing claims against the City of Big Spring through its employee, Reyna, in his official capacity.

4

Martin did not check the box to indicate that he was suing Reyna in his personal capacity. Regardless, the Court must construe Martin's pleadings liberally, *Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023); therefore, the undersigned finds that Martin has also pleaded claims against Reyna in his personal capacity.

As for the substance of Martin's claims, he alleges that Reyna, in both his personal and official capacity, violated Martin's rights under the Fourth Amendment by unreasonably: (1) attempting to seize Martin's person; (2) attempting to seize Martin's dog; and (3) seizing Martin's property that the abatement order did not cover. Dkt. No. 21 at 3–4. Relatedly, he claims that Reyna's actions violated his Fourteenth Amendment rights, specifically his rights to "protection" and due process of law. *Id.*; *see also* Dkt. No. 34 at 1.

Martin seeks compensatory damages of $5,900 and punitive damages of $750,000. Dkt. No. 21 at 5. Martin also requests unspecified injunctive relief. *Id.*

### B. Reyna's Motion to Dismiss

Reyna makes three principal arguments for dismissal. First, Reyna asserts that Martin's allegations are conclusory and do not establish a plausible constitutional violation to support his official or personal-capacity claims. Along these lines, Reyna argues that Martin has not identified any action that triggers Fourth Amendment protections or represents a Fourth Amendment violation. Dkt. No. 28 at 3. Additionally, Reyna asserts that the Fourteenth Amendment claim fails because Martin does not question the validity of the abatement order or allege that Reyna operated beyond the scope of the abatement process. Dkt. No. 28 at 3.

Second, Reyna maintains that Martin cannot establish the elements for municipal liability under *Monell*. He asserts that Martin has not identified a policy or policymakers but rather, at most, an isolated incident. Dkt. No. 28 at 5. Reyna also challenges whether Martin has demonstrated that a policy—were one found—was the moving force behind the alleged violations of his constitutional rights.

Third, Reyna asserts that he is entitled to qualified immunity for Martin's personal capacity claims. *Id.* at 6. For this argument, Reyna reasserts that Martin has failed to plausibly allege a constitutional violation. He then argues that Martin "cannot point to clear and binding precedent that prohibits a code enforcement official from removal of property during the abatement process[.]" *Id.* at 8. Finally, Reyna argues that Martin cannot overcome the objective reasonableness prong, saying that he cannot prove that every code enforcement officer would have known that the alleged actions violated Martin's clearly established rights.

In his Response, Martin makes several nonspecific arguments for denying Reyna's Motion. However, Martin claims that the abatement order qualifies as a policy for *Monell* purposes, that the City Council was the policymaker, and that the order was the moving force behind the alleged constitutional violations.

Reyna filed a Reply, which largely rehashes the arguments made in his Brief. *See* Dkt. No. 39. Martin filed a Surresponse, which the Court ordered unfiled. Dkt. Nos. 40, 41.

### C.  Martin's Motion for Summary Judgment

Martin's Surresponse indicated that he sought summary judgment. In the Order directing the Clerk to unfile Martin's Surresponse, the Court informed Martin that if he sought summary judgment, he would need to file a motion. Dkt. No. 41.

Martin filed his Motion for Summary Judgment on January 22, 2024. Dkt. Nos. 42, 43. Martin did not provide any additional evidence in support of his Motion, and his arguments for judgment as a matter of law are the same as those raised throughout his pleading and Response. Reyna objects to Martin's factual assertions in the Motion for Summary Judgment, claiming they are unsupported and inadmissible. Reyna cites this to argue that Martin has not carried his burden as the movant for summary judgment. Reyna then recites the substantive arguments made in his Motion to Dismiss as arguments for denying the Motion for Summary Judgment.

### IV.  ANALYSIS

### A.  Rule 12(b)(6) Standard

A party may bring a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation and internal quotation marks omitted). The Court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova*

7

*Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a plaintiff must plead sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Martin's Fourth and Fourteenth Amendment claims are inextricably intertwined.

To state a claim under § 1983, Martin must "allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). A suable "person" under § 1983 includes: (1) state and municipal officials sued in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 27 (1991); (2) municipal officials sued in their official capacities, *Monell*, 436 U.S. at 690 n.55; (3) municipal entities, *id.* at 690; and (4) private persons engaged in state action, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). Martin claims that Reyna, a suable person under § 1983 in both his personal and official capacities, violated his Fourth and Fourteenth Amendment rights.

But to hold a municipality—through a claim against an employee in their official capacity—liable under § 1983 requires proof of three additional elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (citations omitted). Notably, the Supreme Court expressly rejected

8

*respondeat superior* liability under Section 1983, including in the context of municipal liability, because of the statutorily required *actual* culpability—versus constructive or vicarious culpability. *Monell*, 436 U.S. at 693; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997) (discussing that the municipal liability inquiry under Section 1983 should not collapse into a *respondeat superior* analysis). Thus, the City cannot be vicariously liable for Reyna's actions under § 1983, and the Court must analyze Reyna's liability in his personal capacity separately from liability in his official capacity.

### 1. *Personal capacity claims*

Martin alleges that Reyna violated his rights under the Fourth Amendment and the Fourteenth Amendment's Due Process Clause. The Fourth Amendment—as incorporated against the States by the Fourteenth Amendment—guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. These protections extend fully to the civil context. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 67 (1992). Martin does not seem to complain of an unlawful search; thus, to establish a claim under the Fourth Amendment, he must show that Reyna seized his person, house, papers, or effects and that this seizure was unreasonable.

Martin's allegations that Reyna "attempted" to seize him and his dog are not constitutional violations. An attempted seizure—even an unreasonable one—does not implicate the Fourth Amendment. *California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991) ("But neither usage nor common-law tradition makes an attempted seizure a seizure.") Martin has, however, plausibly established a seizure based on his allegations that Reyna took his

9

Hummer and ordered a worker to pick up a riding lawn mower with "pincher things." The question now is whether these seizures were unreasonable.

The Fifth Circuit instructs that a seizure occurring during an abatement is reasonable if it complies with procedural due process. *Freeman v. City of Dallas*, 242 F.3d 642, 652 (5th Cir. 2001) (en banc); *see id.* at 652–54; *see also Cass v. City of Abilene*, No. 1:13-CV-177-C, 2014 WL 12642540, at *2 n.1 (N.D. Tex. May 15, 2014) (Cummings, J.) ("The Court notes that state action in relation to private property under circumstances similar to some extent to the allegations found herein (loss of property due to government action) brings mixed questions of Fourth Amendment seizure and Fourteenth Amendment due process rights.") (citation omitted).

This focus on procedural due process originated in *Freeman*, where the Fifth Circuit sitting en banc announced that a warrantless seizure during the abatement process did not violate the Fourth Amendment per se. 242 F.3d at 652. The Court then concluded that the seizures in that case were reasonable because the defendant city's ordinances and procedures governing abatement "comport with due process," which "suggests the Fourth Amendment reasonableness of the [defendant's] final remedial orders." *Id.* at 653. The Court made clear in a footnote the tie between the reasonableness of a seizure under the Fourth Amendment and due process under the Fourteenth Amendment, stating, "the Fourth Amendment reasonableness of a seizure and demolition of nuisance property will ordinarily be established when the substantive and procedural safeguards inherent in state and municipal property standards ordinances have been fulfilled." *Id.* at 654 n.17.

Since *Freeman*, the Fifth Circuit has adhered to this approach. *See Kinnison v. City of San Antonio*, 480 F. App'x 271, 281 (5th Cir. 2012) (per curiam) ("We see no reason to depart from the general practice of tethering the outcome of the Fourth Amendment inquiry to whether the property deprivation offended due process."); *RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 846 (5th Cir. 2013) ("Because the Fourth Amendment generally requires no more than due process of law in summary abatement cases, the outcome of a Fourth Amendment claim depends on whether the seizure complied with due process.") Therefore, to establish the unreasonableness of the seizures in this case, Martin must show an absence of procedural due process.

Martin cannot make this showing, and to see why, it is important to note how Martin's case is distinct from most cases alleging unlawful seizures in the abatement context. For one, Martin acknowledges that the City issued an order authorizing the abatement of certain conditions on his properties. *See Kinnison*, 480 F. App'x at 272–73; *RBIII*, 713 F.3d at 842. And he does not dispute the validity of this order or the procedure leading up to the City issuing it.[3] *See Freeman*, 242 F.3d at 647. Instead, Martin complains that Reyna seized items not covered by the order.

Martin's insistence that Reyna ventured beyond the order's scope makes all the difference. It is well established that, whether intentional or negligent, the "deprivation of property by a state employee" is not a due process or constitutional violation "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517,

---

[3] Martin admits that the City held a hearing regarding the abatement of his properties, that he attended this hearing, and that he agreed to the general outlines of the abatement order. Dkt. No. 21-1 at 2.

531, 533 (1984). The Fifth Circuit has held that the tort of conversion—which Texas law recognizes—is an adequate post-deprivation remedy for someone alleging a denial of due process based on the loss of their property. *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994). State tort suits fail to provide a meaningful remedy only when "a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." *Schwarzer v. Wainwright*, 810 F. App'x 358, 359 (5th Cir. 2020) (quoting *Hudson*, 468 U.S. at 532).

Here, Martin complains that Reyna deprived him of property that *was not* the subject of the abatement order. In essence, he alleges that Reyna's actions were not authorized. But if, as is alleged here, the abatement process comported with due process, and the alleged harm resulted from Reyna going rogue and departing from that process, then the deprivation of Martin's property was not the result of a state procedure. *See Hudson*, 468 U.S. at 519, 530–533 (finding corrections officer's intentional and unauthorized seizure of inmate's property during a "shakedown" search was not a seizure made pursuant to an established state procedure). Accordingly, a conversion claim under Texas law provides Martin with a remedy for the deprivation of his property and, as a result, the procedural due process owed to him.

Without a due process violation, Martin cannot show that the seizures of his property were unreasonable. Thus, Martin cannot plead a viable claim against Reyna in his personal capacity under the Fourth and Fourteenth Amendments.[4]

---

[4] Because the undersigned concludes that Martin has failed to allege a plausible constitutional violation, there is no need to address whether Reyna is entitled to qualified immunity.

### *2.   Official capacity claims under* Monell

Resolving Martin's personal capacity claims against Reyna also resolves the official capacity claims. As explained above, to hold the City liable via Reyna's official capacity under *Monell* requires "a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee*, 675 F.3d at 866. But because there is no constitutional violation under the Fourth or Fourteenth Amendments, there can be no *Monell* liability.

## VII.  CONCLUSION

For the reasons above, the undersigned RECOMMENDS that the Court GRANT Reyna's Motion to Dismiss and dismiss Martin's claims for failure to state a claim upon which relief may be granted. Additionally, the Court should resolve Martin's Motion for Summary Judgment as moot.

## VIII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 3rd day of May 2024.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE